In the Matter of ELLEN. LASOFF et al., Respondents, v BARBARA BLUM, as Commissioner of the New York State Department of Social Services, Appellant, et al., Respondent.

Third Department, March 11, 1982

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Diane DeFurio Foody* and *Shirley Adelson Siegel* of counsel), for appellant.

*Peter W. Hill* for Ellen Lasoff and another, respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

As of March of 1979, petitioners Ellen Lasoff and James Lieberman lived together with a two-year-old child born from their union as well as an eight-year-old child from

Lieberman's previous marriage. Prior to this time, respondent Delaware County Department of Social Services had treated them as two separate "economic units" for food stamp purposes. Upon the implementation of new Federal regulations following passage of the 1977 Food Stamp Act (Public Law 95-113), the local agency determined on March 20, 1979 that petitioners and their children were henceforth to be classified as a single "household" for food stamp purposes. In addition, the increase in petitioner Lasoff's Aid to Families with Dependent Children (AFDC) grant, which occurred upon her entry into the fourth month of pregnancy in November of 1978 with the couple's second child (see former 18 NYCRR 352.30 [c]), was included as income to the household for food stamp purposes. These decisions by the local agency resulted in a decrease in petitioners' food stamp allotment from $136 per month to $72 per month.[1]

Following petitioners' request, a fair hearing was held to determine the propriety of the determinations classifying petitioners and their children as one "household" and including as income to the household Lasoff's AFDC pregnancy allowance. The State commissioner found these determinations to be correct. Petitioners then commenced this CPLR article 78 proceeding against respondents alleging, *inter alia,* that the reduction of their food stamp allotment was arbitrary and capricious and in violation of section 1983 of title 42 of the United States Code. Special Term, in granting petitioners' application, ordered respondents (1) not to classify Lieberman as a member of the Lasoff "household" for food stamp purposes, (2) not to include Lasoff's AFDC pregnancy allowance as part of her household's food stamp income, and (3) to reimburse petitioners for all food stamps wrongfully withheld. Special Term also held that petitioners were entitled to reasonable attorney's fees (US Code, tit 42, § 1988). This appeal by respondent State commissioner ensued.

■ Special Term correctly held that the inclusion of Lieberman and his Supplemental Security Income (SSI) in the Lasoff household for purposes of determining the

---

1. Following the birth of petitioners' second child on May 1, 1979, the household's food stamp authorization was adjusted upward.

household's food stamp allotment was error. Lieberman testified at the fair hearing that he used his SSI to eat all of his meals outside the home. An unsworn statement to that effect from Lasoff was also introduced. No other testimony or evidence on that issue was received. The State commissioner found petitioners' story that Lieberman did not purchase food and prepare meals with the others to be wholly lacking in credibility and concluded that petitioners and their children were "a group of individuals who live together and customarily purchase food and prepare meals together for home consumption" (US Code, tit 7, § 2012, subd [i], par [2]). However, no request for verification of petitioners' story was made.

Federal regulations in effect at the time required as follows: "(i) *Household composition.* If questionable, State agencies shall verify any factors affecting the composition of a household such as household size and boarder status. However, due to the difficulty in verifying whether or not a group of individuals customarily purchases and prepares meals together and, therefore, constitutes a household, State agencies shall generally accept the household's statement regarding food preparation and purchasing." (7 CFR 273.2 [f] [2].) It thus appears clear to us that the Federal regulation required the State agency to seek verification of petitioners' contention before it chose to disbelieve the story that Lieberman ate all of his meals away from home.[2] While the regulation does not require that the State agency blindly accept every statement it receives regarding the composition of a household, the provision requiring that such statements be generally accepted, coupled with the mandatory requirement that agencies *shall* verify questionable information, leads us to the conclusion that it was arbitrary for the State commissioner to reject petitioners' position without first utilizing the verification procedures established under Federal law.[3]

---

**2.** We note that this holding does not require that the State agency disprove a statement concerning factors which affect the composition of a household. Once verification is sought, the responsibility for providing the necessary documentary evidence is on the household (7 CFR 273.2 [f] [5] [i]). In the absence of a request for verification, however, the party seeking food stamps cannot be faulted for failing to support his statement of household composition with the appropriate documentation.

**3.** In *Matter of Fife v Blum* (83 AD2d 670), this court held that a determination by

■ Turning to the issue regarding Lasoff's AFDC pregnancy allowance, Special Term erred in ruling that this money could not be included in the household's income in computing food stamp benefits. With certain enumerated exclusions, household income is defined to include "all income from whatever source" (US Code, tit 7, § 2014, subd [d]). Since Lasoff's pregnancy allowance was available for her own needs and could be spent on food, it was not excludable from computation of household income as "moneys received and used for the care and maintenance of a third-party beneficiary who is not a household member" (US Code, tit 7, § 2014, subd [d], par [6]; *McCoy v Bergland,* 519 F Supp 796; *Carter v Blum,* 493 F Supp 368).

Accordingly, the judgment of Special Term should be modified by reversing that portion which prohibited respondents from including petitioner Lasoff's AFDC pregnancy allowance in the computation of her household income for food stamp purposes, and, as so modified, affirmed, without costs.

MAIN, MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Judgment modified, on the law, by reversing that portion which prohibited respondents from including petitioner Lasoff's AFDC pregnancy allowance in the computation of her household income for food stamp purposes, and, as so modified, affirmed, without costs.

■

the State commissioner that petitioner was living together with a man as husband and wife, and that they shared meals together, was supported by substantial evidence. That case came to this court as a transferred CPLR article 78 proceeding on the issue of whether there was substantial evidence to support the administrative determination. It appears that in *Fife,* as in the instant case, no verification was requested concerning the applicants' statement of household composition and that the applicants' statement was disbelieved. However, the issue of whether the State agency could reject the applicants' statement of household composition without requesting verification was not argued by petitioner in *Fife* or addressed by this court in its decision. In the instant proceeding, the verification issue was raised in petitioners' petition and made a basis of Special Term's decision granting petitioners' application.